# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:22-cv-00120-MOC
# (CRIMINAL CASE NO. 3:14-cr-00208-MOC-DSC-1)

| | |
|---|---|
| **PAL BURKS,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Petitioner's Pro Se Motion to Vacate Sentence under 28 U.S.C. § 2255 [CV Doc. 1],[1] and the Government's Motion to Dismiss Petitioner's Motion to Vacate [CV Doc. 5].

## I.   BACKGROUND

Pro Se Petitioner Paul Burks was president and owner of Zeekler, an internet penny auction site, and its advertising division, ZeekRewards. [CR Doc. 114 at ¶¶ 5-6: Presentence Investigation Report (PSR)]. Zeekler identified as a multi-level marketing company that sold VIP bids to "affiliates." [Id.]. The VIP bids functioned as investment shares. To profit from the purchase of VIP bids, affiliates had to purchase subscriptions from Zeekler. [Id.]. Affiliates were asked to place an ad for the online penny auction site to attract additional customers. [Id.]. Initially, affiliates were promised a 125% return on their investment. [Id. at ¶ 7]. Later, affiliates were promised they would be able to participate in the Retail Profit Pool (RPP) and collectively share

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:22-cv-00120-MOC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:14-cr-00208-MOC-DSC-1.

50% of the company's daily net retail profits. [Id.]. In reality, however, as much as 98% of the profits generated by Zeekler were made through affiliate investments, not auction bids. [Id.]. Petitioner falsely represented that Zeekler's penny auction site was generating massive retail products. [Id. at ¶ 14]. He maintained, "at best, a rudimentary accounting system with no company oversight of revenues and expenditures and no ability to determine company profit in an accurate manner." [Id. at ¶ 17]. Consequently, Petitioner alone determined the purported profitability of the company. [See id.]. Petitioner issued false IRS forms to victim-investors, reporting fictional "income" purportedly earned through the scheme. [Id. at ¶ 30]. By August 2012, there were approximately 3 billion outstanding VIP bid points in the retail profit pool, purportedly worth $2.8 billion, but there was only $320 million available to pay out victim-investors. [Id. at ¶ 27]. Over 800,000 victims lost more than $800 million from the scheme. [Id. at ¶ 36].

In October 2014, a grand jury indicted Petitioner on one count of conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349, one count of mail fraud in violation of 18 U.S.C. § 1341, one count of wire fraud in violation of 18 U.S.C. § 1343, and one count of tax fraud conspiracy in violation of 18 U.S.C. § 371, for operating this internet scheme. [CR Doc. 1: Bill of Indictment]. Some factual allegations of the Indictment referenced Petitioner's conduct as a "Ponzi" scheme involving "Ponzi-like" payments. [See id.]. Petitioner retained counsel and proceeded to trial.

At the 13-day trial, Petitioner sought to present testimony from John P. White, an accounting and fraud investigation expert, that ZeekRewards was not a Ponzi scheme. [CR Doc. 86 at 10-12: Defendant's Trial Br.]. The Government opposed the testimony, arguing that it would invade the province of the jury in finding facts and applying those facts to the law. [CR Doc. 90 at 1-2: Govt's Mot. in Lim.]. The Government also argued that such testimony was irrelevant

because Petitioner was charged with mail and wire fraud and conspiracy to commit the same, and the Government was not required to prove that he operated a Ponzi scheme to sustain those charges. [Id. at 2]. The Court excluded White's testimony regarding whether fraud had been committed, noting that this was for the jury to find. [CR Doc. 158: Trial Tr. at 14, 106-8].

At the charge conference, Petitioner objected to the jury receiving the Indictment as prepared because of its "Ponzi" references in the factual allegations. [CR Doc. 159: Trial Tr. at 43]. Petitioner was concerned that, because the evidence before the jury did not include the definition of "Ponzi," the jury would be left to its "own imagination," leading to "confusion and difficulty." [Id.]. The Court noted, as to the Government, "[y]ou don't have to prove a ponzi scheme, you just have to prove a scheme and artifice to defraud, whether it turns out to be that or not." [Id. at 45]. Petitioner argued that "the appropriate thing would be to excise [the word Ponzi]. The government can argue that's what this scheme and fraud was all about and explain it how ever they plan to explain to the jury. But it was always made clear to us that this was a misrepresentation case. Ponzi is not charged." [Id. at 49]. The Court granted Petitioner's request to redact the "Ponzi" references in the factual allegations of the Indictment. [See CV Doc. 1-1 at 1-11]. The jury convicted Petitioner on all counts. [CR Doc. 108: Jury Verdict]. The Court sentenced Petitioner to a term of imprisonment of 176 months. [CR Doc. 126: Judgment].

Petitioner appealed, challenging the Court's failure to dismiss the tax fraud charges, as well as its exclusion of certain documentary evidence. The Fourth Circuit affirmed. United States v. Burks, 746 Fed. App'x 191 (4th Cir. 2018), cert. denied, 139 S.Ct. 1204 (2019). Petitioner filed a petition for writ of certiorari, which the Supreme Court denied on February 19, 2019. Id. In May 2020, Petitioner filed a motion for compassionate release, which this Court denied in April 2011. United States v. Burks, No. 3:14-cr-208, 2021 WL 1394857 (W.D.N.C. Apr. 13, 2021).

In March 2022, more than three years after the Supreme Court denied his petition for writ of certiorari, Petitioner filed the pending motion to vacate. [CV Doc. 1]. Petitioner argues that he is "actually and factually innocent" of committing fraud by means of a "Ponzi" scheme, that he was deprived of an opportunity to present a complete defense, and that his attorneys provided ineffective assistance. [Id. at 3-5]. Petitioner claims that his petition is timely because "actual innocence overcomes all procedural bars." [Id. at 7].

Petitioner filed and the Court denied Petitioner's "emergency motion" for an evidentiary hearing. [CV Docs. 2, 3]. The Government moved to dismiss Petitioner's motion as time barred [CV Doc. 5] and Petitioner responded [CV Doc. 7].

This matter is now ripe for adjudication.

## II.    ANALYSIS

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (the "AEDPA"). Among other things, the AEDPA amended 28 U.S.C. § 2255 by imposing a one-year statute of limitations period for the filing of a motion to vacate. Such amendment provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, Petitioner's conviction became final for purposes of § 2255(f) on February 19, 2019, when the Supreme Court denied his petition for certiorari. See Clay v. United States, 537 U.S. 522, 532 (2003) (holding the limitations period begins to run when the time for seeking review expires). Petitioner, therefore, had until February 19, 2020 to file his motion to vacate. Because Petitioner did not file this motion until March 2022,[2] it is untimely. See 28 U.S.C. § 2255(f). Petitioner does not explain the significant delay in filing the instant motion, claiming only that "actual innocence overcomes all procedural bars." [CV Doc. 1 at 7]. That is, Petitioner seeks judicial review of his claims through the "actual innocence gateway" established in McQuiggin v. Perkins, 569 U.S. 383 (2013). This gateway allows review of habeas petitions filed outside of the one-year limitations under 28 U.S.C. § 2255(f) for a petitioner who can demonstrate that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). As the Supreme Court repeatedly emphasized in McQuiggin, the so-called "Schlup standard" is a demanding one. See McQuiggin, 569 U.S. at 387 ("We caution, however, that tenable actual-innocence gateway pleas are rare…."); id. at 394-95 ("The miscarriage of justice exception, we underscore, applies to a severely confined category…."); id. at 399 ("To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" (quoting Schlup, 513 U.S. at 327)); id. at 401 ("We stress once again that the Schlup standard is demanding.").

To establish a claim of actual innocence, a petitioner must support his allegations of

---

[2] There is some ambiguity regarding on which date in March 2022 Plaintiff filed the pending motion to vacate. [See CV Doc. 1 at 8; cf. CV Doc. 1-3]. Regardless, there is no contention that it was filed any time before March 2022.

constitutional error "with new reliable evidence that was not proffered at trial." Finch v. McKoy, 914 F.3d 292, 298-99 (4th Cir. 2019). A petitioner also must demonstrate that it is more likely than not that "the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt." Id. at 299 (quoting Teleguz v. Pearson, 689 F.3d 322, 329 (4th Cir. 2012)). A petitioner's "[u]nexplained delay in presenting new evidence" weighs on whether he has made the requisite showing. Id.

Petitioner here presents no new evidence to support his claim of actual innocence. Thus, he cannot begin to meet the Schlup standard. Moreover, Petitioner makes no showing of actual innocence. His arguments rest on claims of legal error that could have been raised earlier, not on factual innocence. See United States v. Pettiford, 612 F.3d 270, 282 (4th Cir. 2010) (a petitioner must show that he "did not commit the crime of which he was convicted" not that he "is legally, but not factually, innocent") (internal quotations and citation omitted). Petitioner argues that the removal of nine references to "Ponzi" in the Indictment, which he requested, constructively amended the Indictment and that he is actually innocent because he was not convicted of a "Ponzi" scheme as charged. [CV Doc. 2 at 4-7]. He also complains that the Court prevented him and his expert, John White, from putting on evidence that "would conclusively demonstrate that there was no PONZI scheme" and that he was thus "denied the opportunity to present a complete defense to the false allegations that he operated a PONZI scheme." [Id. at 52 (internal quotation marks omitted)]. Petitioner claims that his attorneys provided ineffective assistance of counsel because they asked the Court to remove the Indictment's "Ponzi" references and failed to object when the Government referenced a Ponzi scheme during its closing argument. [Id. at 79-86]. None of these arguments involve new evidence or establish that it is more likely than not that no reasonable juror would have convicted him of the charged crimes with such non-existent evidence. Again, these

6

arguments should have been raised on direct appeal or in a timely motion to vacate.

Additionally, equitable tolling does not apply. To be entitled to equitable tolling, "an otherwise time-barred petitioner must present '(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.'" United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003), cert. denied, 541 U.S. 905, 124 S. Ct. 1605 (2004)). A petitioner must show he has been "pursuing his rights diligently." Holland v. Florida, 560 U.S. 631, 649 (2010). Further, equitable tolling is limited to "rare instances – where due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Whiteside v. United States, 775 F.3d 180, 184 (4th Cir. 2014) (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003)). Petitioner presents no excuse, viable or not, for his delay in filing the pending motion. Nor does it appear that a gross injustice would result from enforcing the limitations period against Petitioner. See Whiteside, 775 F.3d at 184. The evidence at trial was more than sufficient to convict Petitioner of the crimes charged.

As such, Petitioner's claim is untimely under § 2255(f) and equitable tolling does not apply. The Court will, therefore, dismiss Petitioner's motion to vacate.

### III. CONCLUSION

Having concluded that Petitioner's motion to vacate is untimely under § 2255(f)(1), the Court will grant the Government's motion to dismiss.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED** and the Government's Motion to Dismiss [Doc. 5] is **GRANTED**.

7

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: July 26, 2022

Max O. Cogburn Jr.
United States District Judge